IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 29, 2011

## EVA WEAVER v. PRISCILLA DEVERELL, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
No. CH100532      Arnold B. Goldin, Chancellor

### No. W2011-00563-COA-R3-CV - Filed October 26, 2011

This is a case involving life insurance and a Power of Attorney. After Decedent named Appellant as his attorney-in-fact through a Power of Attorney, the Appellant changed Decedent's life insurance policy to name herself as primary beneficiary. Appellee, the previous beneficiary of the policy, filed this action to prevent Appellant from receiving the proceeds, alleging fraud. The trial court found that the Uniform Durable Power of Attorney Act prevented Appellant from changing the beneficiary of the policy. Further, the trial court held that Appellant's argument that she had actual authority to make the change was an affirmative defense that was waived by Appellant's failure to specifically plead it. Based on the foregoing, we affirm in part, reverse in part and remand.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Barry J. McWhirter, Memphis, Tennessee, for the appellant, Priscilla Deverell.

David F. Kustoff, Memphis, Tennessee, for the appellee, Eva Weaver.

### OPINION

### I. Background

On May 13, 2009, Percy Holmes ("Mr. Holmes") signed, and caused to be notarized, a durable power of attorney naming his daughter Defendant/Appellant Priscilla Deverell ("Ms. Deverell") as his attorney-in-fact. The Power of Attorney stated:

That I, Percy Holmes, of Shelby County Tennessee, do hereby make, constitute, and appoint my daughter Priscilla G. Deverell, daughter, as my true and lawful attorney in fact, to execute and take care of on my behalf all documents, instruments, and other matters which may arise which in her discretion she may deem wise in regard to my affairs. This Power of Attorney is to include all those things which I could do for myself.

This Power of Attorney shall only be in effect while I am incarcerated or in the event that I become disabled and no longer have the capacity to attend to my affairs.

* * *

That this Power of Attorney shall remain in full force and effect until revoked by me. Pursuant to Tennessee Code Annotated §34-6-101, et seq., this Power of Attorney shall not be affected by my subsequent disability or incapacity, but rather is to continue in force in the event that I should become incompetent or unable to handle my affairs in any way.

It is undisputed that Mr. Holmes was competent at the time he executed the Power of Attorney.[1]

During Mr. Holmes' life, he purchased a life insurance policy[2] for $25,000,[3] designating Plaintiff/Appellee Eva Weaver ("Ms. Weaver") as the primary beneficiary. Mr. Holmes and Ms. Weaver lived together for 20 years, during which time, Ms. Weaver paid the premiums on the life insurance policy.

In November of 2009, approximately six months after Mr. Holmes executed the Power of Attorney in favor of Ms. Deverell, Ms. Deverell caused the primary beneficiary on the life insurance policy to be changed from Ms. Weaver to herself.

---

[1] The record does not mention Mr. Holmes' age at any time during these events or why he was concerned about future incarceration.

[2] The life insurance policy was maintained by Family Life Insurance Co., which was also named as a defendant to this suit; however, the insurance company is not a party to this appeal.

[3] While the face-value of the policy was $25,000.00, due to loans made on the policy during Mr. Holmes' life, in the amount of $4,566.37, along with $141.12 in accrued interest, the amount payable on the policy at the time of Mr. Holmes' death was $20,292.51.

Mr. Holmes died on February 13, 2010.[4]  After Mr. Holmes' death, both Ms. Weaver and Ms. Deverell applied to the life insurance company for the benefits under the policy.[5]

Ms. Weaver subsequently filed a complaint in the Shelby County Chancery Court, alleging that Ms. Deverell fraudulently changed the life insurance beneficiary to herself.  Ms. Deverell answered with a motion to dismiss, contending that the complaint failed to state a claim upon which relief could be granted. Ms. Deverell also denied that the change of beneficiary was in any way improper or fraudulent. Further, Ms. Deverell's answer reserved the right to amend the answer to allege any additional affirmative defenses which may be dictated by discovery.

Ms. Weaver then moved for summary judgment, arguing: (1) the Power of Attorney had not gone into effect because Mr. Holmes maintained the competency needed to attend to his affairs at the time of the beneficiary change; (2) Ms. Deverell breached her fiduciary duty by naming herself as the primary beneficiary of the policy; and (3) the Power of Attorney should be construed in light of the Uniform Durable Power of Attorney Act, specifically Tennessee Code Annotated Sections 34-6-108 to -109, which prohibits Ms. Deverell from changing the beneficiary on any life insurance policy without express authorization to do so within the Power of Attorney.

Ms. Deverell responded to the motion for summary judgment arguing that: (1) Mr. Holmes lacked physical capacity to attend to his affairs, triggering the Power of Attorney; (2) Ms. Deverell did not breach her fiduciary duty because Mr. Holmes intended that Ms.

---

[4] There is some debate as to whether Mr. Holmes was competent at the time of his death. Ms. Weaver argues that Mr. Holmes became incompetent shortly before his death, but was still competent at the time Ms. Deverell changed the beneficiary of the insurance policy. Ms. Deverell, however, argues that at no time was Mr. Holmes incompetent. Instead, Ms. Deverell argues that, prior to her changing the beneficiary on the insurance policy, Mr. Holmes became ill and lacked the physical capacity, rather than the mental competency, needed to attend to his affairs, triggering the Power of Attorney. The issue of Mr. Holmes' competency is not material to the determination of whether the Uniform Durable Power of Attorney Act applied to Mr. Holmes' Power of Attorney or whether the trial court was in error in refusing to consider Ms. Deverell's actual authority defense.

[5] At the time of the motion for summary judgment, neither party had received any proceeds from the insurance policy. Instead, the parties agreed to interplead the proceeds to the clerk of the Shelby County Chancery Court pending resolution of this action. An order granting leave to deposit the proceeds with the court clerk was entered on May 24, 2010 and amended by order of September 17, 2010 to correct a technical deficiency.

Deverell designate herself primary beneficiary of the insurance policy;[6] and (3) the limitations in the Uniform Durable Power of Attorney Act were not applicable to the Power of Attorney at issue because the document did not invoke the language expressly and gave the attorney-in-fact the power to do anything Mr. Holmes could for himself, including change the beneficiary on his life insurance policy.

On February 18, 2011, the Chancellor granted summary judgment, finding that the Uniform Durable Power of Attorney Act applied to the Power of Attorney at issue and prevented Ms. Deverell from changing the beneficiary of the life insurance policy. During the hearing, Ms. Deverell allegedly argued[7] that summary judgment was in error because, despite the application of the Uniform Power of Attorney Act, Ms. Deverell had actual authority to change the beneficiary, evidenced by her deposition testimony that Mr. Holmes told Ms. Deverell to change the beneficiary to herself. The Chancellor found that actual authority was an affirmative defense in this case and concluded that, because Ms. Deverell failed to plead the defense, the defense was waived. Ms. Deverell then orally moved to amend her answer to plead the defense of actual authority. Again, the court denied her request, finding that a motion to amend after the grant of summary judgment was untimely. On February 22, 2011, the court entered separate orders granting summary judgment to Ms. Weaver and denying Ms. Deverell's oral motion to amend her answer to plead actual authority.

Ms. Deverell appeals.

## II. Issues

Ms. Deverell raises the following issues on appeal:

1.    Whether the trial court erred in granting summary judgment to Ms. Weaver by finding that Ms. Deverell did not have authority to change the beneficiary pursuant to the Power of Attorney?
2.    Whether the trial court erred in refusing to consider Ms. Deverell's actual authority argument?
3.    Whether the trial court erred in determining that the order granting Ms. Weaver's

---

[6] During discovery, Ms. Weaver took Ms. Deverell's deposition, which is not included in the record. According to Ms. Deverell's Memorandum in Opposition to the Motion for Summary Judgment, Ms. Deverell stated in the deposition that Mr. Holmes authorized her to change the beneficiary of the life insurance policy and Mr. Holmes intended that Ms. Deverell be named the primary beneficiary.

[7] A transcript of the motion hearing is not contained in the record.

motion for summary judgment is a final judgment?

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Mathews Partners, L.L.C . v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn.1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn.2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners,* 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts

reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn.1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id*. at 24–25.

## IV. Analysis

### Final Judgment

Because the subject matter jurisdiction of this Court rests on whether the appealed order is final,[8] we will first consider Ms. Deverell's argument that the order granting

---

[8] Subject matter jurisdiction concerns the authority of the court to hear a matter and cannot be waived. ***Meighan v. U.S. Sprint Commc'ns Co.***, 924 S.W.2d 632, 639 (Tenn. 1996). The court may consider subject matter jurisdiction *sua sponte*. Tenn. R. App. P. 13(b); ***Ruff v. State***, 978 S.W.2d 95, 98 (Tenn. 1998). The Tennessee Supreme Court has held that "[u]nless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." ***Bayberry Assocs. v. Jones***, 783 S.W.2d 553, 559 (Tenn. 1990). Rule 3(a) of the Tennessee Rules of Appellate Procedure limits the subject matter jurisdiction of appellate courts to final judgments:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 or in Rule 54.02 of the Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

(continued...)

summary judgment was not final. A final judgment is "one that resolves all of the parties' claims and leaves the court nothing to adjudicate." **Ball v. McDowell**, 288 S.W.3d 833, 836–37 (Tenn. 2009). The trial judge's decision rests on the application of the Uniform Durable Power of Attorney Act, which the court found prevented Ms. Deverell from changing the beneficiary of the insurance policy. The trial court also declined to consider Ms. Deverell's actual authority argument, finding it waived. Ms. Deverell argues that, because Ms. Weaver's complaint sounded in fraud, these decisions were not enough to dispose of all the issues in the case. However, the order states, in the judge's handwriting, "All other claims are hereby rendered moot by the Court's ruling as set out herein." Further, the amended order specifically states that "[a]ny claims not specifically addressed in the Court's prior order are hereby denied as if specifically denied and dismissed with prejudice." Ms. Weaver neither appealed, nor took issue with this ruling. Accordingly, the order granting summary judgment was a final judgment and this Court has subject matter jurisdiction to hear this appeal. *See* Tenn. R. App. P. 3 ("[A]ny order that adjudicates fewer than all the claims or the rights of fewer than all the parties is not enforceable or appealable . . . .").

### Uniform Durable Power of Attorney Act

Ms. Deverell next argues that the Chancellor erred when he granted summary judgment based on the Uniform Durable Power of Attorney Act, specifically Tennessee Code Annotated Sections 34-6-108 to -109. "A written power of attorney that states that it is not affected by the subsequent disability or incapacity of the principal is a 'durable power of attorney'" **Tenn. Farmers Life Reassurance Co. v. Rose**, 239 S.W.3d 743, 748 (Tenn. 2007) (citation omitted). Durable Powers of Attorney are construed in light of the Uniform Durable Power of Attorney Act, Tennessee Code Annotated Sections 34-6-101 to -111. Certain provisions of the Act, however, apply only to Powers of Attorney that clearly intend to incorporate those provisions; Tennessee Code Annotated Section 34-6-108(a) states:

> Upon the principal clearly expressing an intention to do so within the instrument creating a power of attorney, the language contained in § 34-6-109 may be incorporated into the power of attorney by appropriate reference. The provisions so incorporated shall apply to the attorney in fact with the same effect and subject to the same judicial interpretation and control in appropriate cases, as though the language were set forth verbatim in such instrument.

---

[8](...continued)
*Id.* If the trial court did not adjudicate all of the parties' claims, it did not enter a final judgment. Without a final judgment, this Court does not have subject matter jurisdiction.

Tennessee Code Annotated Section 34-6-109 then enumerates twenty-two specific powers that may be incorporated by reference into a Power of Attorney pursuant to Tennessee Code Annotated Section 34-6-108(a). These powers include, among other things, the power to "[a]cquire, maintain, cancel or in any manner deal with any policy of life, accident, disability, hospitalization, medical or casualty insurance, and prosecute each claim for benefits due under any policy." *See* Tenn. Code Ann. §34-6-109(5). However, Tennessee Code Annotated Section 34-6-108(c) goes on to state:

> Nothing contained in this section and § 34-6-109 shall be construed to vest an attorney in fact with, or authorize an attorney in fact to exercise, any of the following powers:
>
> * * *
>
> (5) Change beneficiary designations on any death benefits payable on account of the death of the principal from any life insurance policy, employee benefit plan, or individual retirement account . . . .

Ms. Deverell argues that the limitation above does not apply because the Power of Attorney at issue does not "clearly express an intention to" incorporate by reference Tennessee Code Annotated Sections 34-6-108 to -109. We disagree. The Tennessee Supreme Court has held that Sections 34-6-108 to -109 applied to a Power of Attorney, which used the language, "[this Power of Attorney] shall not be affected by [the principal's] subsequent disability or incapacity and is made pursuant to the Uniform Power of Attorney Act as codified in Tennessee Code Annotated, Section 34-6-101, et seq." *See* **Stewart v. Sewell**, 215 S.W.3d 815, 818, 827 n.13 (Tenn. 2007); *see also* **Arvest Bank v. Byrd**, Nos.10-2004, 10-2007, 2011 WL 902410, at *7 (W.D. Tenn. March 14, 2011) (construing nearly identical language so as to incorporate Sections 34-6-108 to -109).

It is undisputed that Mr. Holmes' Power of Attorney contains the following language:

> Pursuant to Tennessee Code Annotated §34-6-101, et seq., this Power of Attorney shall not be affected by my subsequent disability or incapacity, but rather is to continue in force in the event that I should become incompetent or unable to handle my affairs in any way.

In a Power of Attorney, the Latin phrase "*et seq.*" means "'[a]nd those (pages or sections) that follow.'" **Arvest Bank,** 2011 WL 902410*,* at *7 (quoting Black's Law Dictionary 633 (9th ed. 2009)). "Because §34-6-109 follows §34-6-101 and the Tennessee Supreme Court has found essentially identical language sufficient to incorporate the powers listed in §34-6-

109, the plain terms of th[is] power of attorney" likewise incorporate Tennessee Code Annotated Section 34-6-109. *Arvest Bank,* 2011 WL 902410*,* at \*7 (citing *Sewell*, 215 S.W.3d at 818, 827 n.13)). Accordingly, Tennessee Code Annotated Section 34-6-108(c) also applies to limit the power of Ms. Deverell to change the beneficiary of the life insurance policy. *See Rose,* 239 S.W.3d at 748–49.

Even when Tennessee Code Annotated Section 34-6-108(c) applies to limit the power of the attorney-in-fact, the principal may still authorize the attorney-in-fact to change the beneficiary of a life insurance policy; however, this power must be specifically enumerated in the Power of Attorney signed by the principal. *See* Tenn. Code Ann. §34-6-108(d) ("Nothing contained in this section and § 34-6-109 shall be construed to . . . restrain an attorney in fact in the taking of any action, notwithstanding the authorizations or powers vested in the attorney in fact by any written instrument into which all or any part of § 34-6-109 is incorporated by reference."); *Rose,* 239 S.W.3d at 748–49 ("[I]n cases in which provisions of section 34-6-109 are incorporated by reference into the power of attorney, an attorney-in-fact is not authorized to change the beneficiary of the principal's life insurance policy unless the principal has expressly authorized the attorney-in-fact to do so within the power of attorney."). Mr. Holmes did not state in his Power of Attorney that his attorney-in-fact had the power to change beneficiaries on his life insurance policy. In fact, insurance is never mentioned in the document. In order to extinguish the limiting power of Tennessee Code Annotated Section 34-6-108(c), the principal must specifically give the attorney-in-fact the power to change the beneficiary within the Power of Attorney. *See Metropolitan Life Ins. Co. v. Raibley*, NO. 3:01-CV-244, 2002 WL 32060136, at \*2 (E.D. Tenn. Feb. 27, 2002) ("Absent an express grant of the power, an attorney-in-fact cannot change the designated beneficiary under a life insurance policy."); *Prudential Ins. Co. of America v. Cannon*, No. 93-673-II, 1995 WL 152536, at \*6–7 (Tenn. Ct. App. April 7, 1995) (finding that the attorney-in-fact did not have the power to change the beneficiary when "[a]t no place in this power of attorney is [the attorney-in-fact] given the specific power to change a beneficiary designation on any life insurance policy"). Accordingly, Ms. Deverell had no power under the Power of Attorney to change the beneficiary on Mr. Holmes' life insurance policy and summary judgment as to this issue was properly granted.

### Actual Authority

Ms. Deverell next argues that the Chancellor erred in finding that actual authority was an affirmative defense. According to this Court:

An affirmative defense is one that wholly or partly avoids the cause of action asserted by the preceding pleading by new allegations that admit part or all of the cause of action, but avoids liability because of a legally sufficient excuse,

justification, or other matter negating the alleged breach or wrong.

***Thompson v. Bowlin***, 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987) (quoting Lawrence A. Pivnick, <u>Tennessee Circuit Court Practice</u> §12–4 (2nd ed. 1986)).  An affirmative defense must be plead specifically in a responsive pleading:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and any other matter constituting an affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

Tenn. R. Civ. P. 8.03. If an affirmative defense is not plead in an original pleading, it is waived. *See* Tenn. R. Civ. P. 12.08.

Ms. Deverell's argument that she had actual authority to change the beneficiary of the life insurance policy implicates the law of agency. This Court previously discussed agency in ***Thornton v. Allenbrooke Nursing and Rehabilitation Center, L.L.C.***, No. W2007-00950-COA-R3-CV, 2008 WL 2687697 (Tenn. Ct. App. July 3, 2008), stating:

> As stated in American Jurisprudence, "[t]he relationship between an agent and a principal is a contractual one . . . . As between the parties to the relationship, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency." 3 Am.Jur.2d Agency § 15 (2007). For an agency relationship to arise, the "principal must intend the agent to act for him or her, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression either in words or conduct between them." *Id.* Further, an agency relationship is only created "at the will and by the act of the principal, and its existence is a fact to be proved by tracing it to some act of the alleged principal, and turns on facts concerning the understanding between the alleged principal and agent." *Id.*

***Thornton***, 2008 WL 2687697, at *5. Actual or real authority "exists when the agent is

-10-

expressly authorized by the principal to act or when the actual authority to act can be implied from the facts." ***Love v. Woods***, No. E2009-02385-COA-R3-CV, 2010 WL 4366072, at *6 (Tenn. Ct. App. Nov. 4, 2010) (quoting 12 Samuel Williston, Treatise on the Law of Contracts § 35:11 (Richard A. Lord ed., 4th ed. 2010)). Unless limited by law or public policy, a principal "may empower his or her agent to do the same acts, to make the same contracts, and to achieve the same legal consequences as the principal would be personally empowered to do." ***Tenn. Farmers Life Reassurance Co. v. Rose***, 239 S.W.3d 743, 749 (Tenn. 2007) (quoting Restatement (Second) of Agency §17 (1958)).

The burden of proof rests on the party asserting the agency relationship. ***Gordon v. Greenview Hosp., Inc.***, 300 S.W.3d 635, 653 (Tenn. 2009). Usually, only an affirmative defense will shift the burden of proof to the defendant. *See* ***Branch v. McCroskey***, No. 03A01-9709-CV-00385, 1998 WL 47873, *2 (Tenn. Ct. App. Feb. 5, 1998) ("Therefore, the defendant bears no burden of proof unless an affirmative defense is asserted."). However, when the facts that support the defense are part of the plaintiff's *prima facie* case, the plaintiff maintains the burden of proof on those facts and the defense need not be affirmatively plead. *See* ***Administrative Resources Inc. v. Barrow Group***, L.L.C., 210 S.W.3d 545, 556 (Tenn. Ct. App. 2006) (quoting ***George v. Alexander***, 931 S.W.2d 517, 527 (Tenn. 1996) ("An affirmative defense pleads a matter that is not within the plaintiff's *prima facie* case."); ***Carr v. Borchers***, 815 S.W.2d 528 (Tenn. Ct. App. 1991) ("Where a defendant . . . asserts the affirmative defense . . . it has the burden of proving facts in support of that defense unless it is a part of the plaintiff's *prima facie* proof.").

Ms. Deverell argues that actual authority is not an affirmative defense because the lack of authority to change the beneficiary is an essential part of Ms. Weaver's fraud claim. The elements of fraud are "(1) an intentional misrepresentation of an existing material fact, (2) knowledge of the representation's falsity, and (3) injury caused by reasonable reliance on the misrepresentation." ***SecurAmerica Business Credit v. Schledwitz***, No. W2009–02571–COA–R3–CV, 2011 WL 3808232, at *12 (Tenn. Ct. App. Aug. 26, 2011) (quoting ***Lopez v. Taylor***, 195 S.W.3d 627, 634 (Tenn . Ct. App. 2005) (citations omitted)). According to Ms. Deverell, because knowledge of the representation's falsity is an essential element of the fraud action, Ms. Weaver must prove that Ms. Deverell knowingly made a false claim to the insurance company. An allegation that, if proven, would indicate that Mr. Holmes authorized Ms. Deverell to change the policy would thus negate that particular element of fraud.

Ms. Weaver cites no authority for her argument that actual authority is an affirmative defense to fraud, nor can we find any. We cannot conclude, therefore, that, as a matter of law, actual authority must be plead as an affirmative defense. Ms. Deverell contends that she had actual authority to change the beneficiary. Ms. Weaver disputes this claim and argues

that the change in beneficiary was fraudulent. The trial court declined to hear any argument regarding this issue and granted summary judgment based solely on the Uniform Durable Power of Attorney Act, *supra*. At issue specifically is whether Ms. Deverell can present any evidence tending to show that an agency relationship authorized her to make the change[9] and whether the policy at issue allows an agent of the principal, not acting as an attorney-in-fact, to change the beneficiary of the policy.[10] Accordingly, we remand for a determination of whether Ms. Deverell had actual authority to change the beneficiary on the life insurance policy and whether such a change would be effective given the language in the policy.

### V. Conclusion

The judgment of the Chancery Court is affirmed in part, reversed in part, and all issues not affirmed by this Court[11] are remanded for further proceedings consistent with this opinion. The costs of appeal are taxed equally to Appellant Priscilla Deverell, and her surety, and to Appellee Eva Weaver, for which execution may issue if necessary.

---

[9] Ms. Deverell's deposition statement, without more, is insufficient to prove an agency relationship. *See Thacker v. Ball*, No. E2006-01876-COA-R3-CV2007 WL 1836846, at *3 (Tenn. Ct. App. June 27, 2007) (citing **Harben v. Hutton**, 739 S.W.2d 602, 606 (Tenn.Ct.App.1987)) ("An agency relationship cannot be proven by the extrajudicial statements of the agent alone. Its existence must be traceable to the principal, because an agency relationship is created by the actions of the principal, not the actions of the agent.").

[10] The actual insurance contract at issue is not included in the record; however, the language of the contract will control whether Ms. Deverell, even acting under color of authority, could effectively change the beneficiary of the policy. This Court has held that in order for a change in beneficiary to be valid, the policy holder must substantially comply with the requirements of the policy with regard to changing the beneficiary. *See Sun Life Assur. Co. of Canada v. Hicks*, 844 S.W.2d 652, (Tenn. Ct. App.1992) (quoting **Cronbach v. Aetna Life Ins. Co.**, 284 S.W. 72 (Tenn. 1926) (noting that a change will not be effective if the "insured has not done all that he reasonably could to meet the conditions of the policy")); *see also* **Life Insurance Co. of North America v. Leeson**, 81 Fed.Appx.521(6th Cir. 2003) (noting that under the specific policy at issue, the principal could direct his agent to deliver, but not sign, a form allowing a change in beneficiary). *But see* **Empire General Life Ins. v. Silverman**, 379 N.W.2d 853 (Wis. Ct. App. 1985) (finding that substantial compliance was met when the decedent instructed his attorney to take any necessary action to change the beneficiary in accordance with his wishes), *review granted*, 383 N.W.2d 62 (1986) *and decision aff'd as modified*, 399 N.W.2d 910 (1987).

[11] We note that the trial court declared moot Ms. Weaver's claim that Ms. Deverell breached her fiduciary duty by naming herself the primary beneficiary of the insurance policy. The decision by this Court renders this claim no longer moot. Accordingly, on remand, the trial court should reinstate Ms. Weaver's allegation that Ms. Deverell breached her fiduciary duty.

_____

J. STEVEN STAFFORD, JUDGE